UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL JESUS BLANCO RODRIGUEZ,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-1248-SKV

ORDER DENYING WRIT OF
HABEAS CORPUS

## I.   INTRODUCTION

Petitioner Daniel Jesus Blanco Rodriguez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, asserting that his immigration detention has become prolonged and therefore violates the Due Process Clause of the Fifth Amendment.  *See* Dkt. 1 at 2.  He submitted a sworn declaration in support.  *Id.*, Ex. 1 ("Blanco Rodriguez Decl.").  Respondents filed a timely return, in which they argue Petitioner is not entitled to a bond hearing because he is subject to mandatory detention under 8 U.S.C. § 1225(b).  *See* Dkt. 5 at 4-7.  Respondents' return is supported by an unsworn declaration from their counsel, Jordan Steveson (Dkt. 6) ("Steveson Decl."), with

ORDER DENYING WRIT OF HABEAS CORPUS -
1

attached exhibits, and a sworn declaration from Department of Homeland Security ("DHS") Deportation Officer Gary Ingram (Dkt. 7) ("Ingram Decl.").  Petitioner did not file a reply.

Having considered the parties' submissions and the governing law, the Court DENIES the petition without prejudice for the reasons set forth below.

## II.   BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States without inspection on or about September 14, 2022.  Blanco Rodriguez Decl., ¶¶ 2, 4; Ingram Decl., ¶ 3. Petitioner asserts he left Venezuela to seek asylum in the United States.  Blanco Rodriguez Decl., ¶ 3.  He was briefly detained and paroled[1] the following day, having been ordered to report to the ICE office near his final destination (Seattle) within 60 days.  Id. ¶ 5.  Thereafter, he reported to the ICE office in Tukwila and enrolled in the Intensive Supervision Appearance Program ("ISAP").[2]  Id. ¶ 6.  The conditions of Petitioner's ISAP enrollment are not before the Court, but he asserts that he has always been compliant with DHS directives.  Id.

ICE did not initiate removal proceedings following Petitioner's arrival in Seattle and enrollment in ISAP.  Id. ¶ 7; Dkt. 5 at 6.  He lived in the Seattle area with his wife and their two

---

[1] Respondents assert Petitioner was released on humanitarian parole pursuant to Immigration and Nationality Act ("INA") § 212(d)(5)(A), codified under 8 U.S.C. § 1182(d)(5)(A), and that it expired on November 16, 2022.  Dkt. 5 at 4; Ingram Decl., ¶ 4.  Petitioner's immigration file appended to Steveson's declaration appears to contain a parole-related document containing a stamp with handwritten field entries by an officer with the initials "RC."  See Steveson Decl., ¶ 2, Ex. B at 2.  This appears to be the only evidence in the record of Petitioner's parole expiration date, but the identity of "RC," and the circumstances under which this document was issued are unclear from the record.  Neither Steveson nor Ingram attest to having personal knowledge of the terms of Petitioner's parole.

[2] Respondents assert only that Petitioner enrolled in an Alternatives to Detention ("ATD") program.  See Ingram Decl., ¶ 5.  They do not provide any associated documents.

ORDER DENYING WRIT OF HABEAS CORPUS - 2

children. Blanco Rodriguez Decl., ¶ 8. While on parole, his wife filed a Form I-730[3] on his behalf, which remains pending. *Id.* ¶ 9. He filed his own asylum petition on September 12, 2023, which was denied. *Id.*

On April 28, 2025, Petitioner was arrested and charged with Assault in the Fourth Degree by the City of Woodinville in the Kirkland Municipal Court. *Id.* ¶ 10. He was released from jail the following day after pleading 'not guilty' and posting bail. *Id.* Petitioner asserts that, following his release, a misunderstanding led to a warrant being issued for his arrest for failing to appear for a hearing. *Id.* Once he learned a warrant had been issued, he contacted the municipal court, posted another bond, and had his warrant recalled. *Id.* He appeared for his next scheduled hearing date on June 2, 2025, and was appointed an attorney. *Id.* He was scheduled to attend another hearing on August 4, 2025, but was unable because he was arrested and re-detained by DHS on July 17, 2025. *Id.* ¶ 11.

Petitioner asserts that, prior to his current arrest and re-detention, he spoke on the phone with someone from ICE, who asked him to schedule a routine ISAP appointment. *Id.* ¶ 13. Petitioner scheduled his check-in for July 17, 2025. *Id.* On the day of his appointment, he completed another intake process and ICE told him that he would be detained. *Id.* He was handcuffed and taken into custody. *Id.* Petitioner asserts that he has never failed to comply with any condition or order imposed on him by DHS. *Id.* ¶ 5. Ingram states that Enforcement and Removal Operations ("ERO") "placed Petitioner into ICE custody due to his recent criminal history when Petitioner reported in person for his scheduled check-in as per ATD." Ingram Decl., ¶ 7. Respondents do not contend that Petitioner was provided with notice stating the

---

[3] An I-730 Form allows a principal asylee to request to have their spouse join them in the United States. U.S. Citizenship and Immigration Services, Refugee/Asylee Relative Petition, Form I-730 (2025), https://www.uscis.gov/i-730. Petitioner's wife entered the United States before him and was granted asylum in November 2022. *See* Blanco Rodriguez Decl., ¶ 8.

ORDER DENYING WRIT OF HABEAS CORPUS -
3

reason for his re-detention or an opportunity to be heard prior to his arrest and re-detention. ERO also issued Petitioner a Notice of Custody Determination and a Warrant for Arrest of Alien.[4]  *Id.*

On October 6, 2025, the Kirkland Municipal Court issued a warrant for Petitioner's arrest for missing his scheduled hearing while detained at the NWIPC.  Blanco Rodriguez Decl., ¶ 11.

On October 16, 2025, Petitioner had an immigration hearing, during which the immigration judge denied his application for asylum, entered an order of removal to Venezuela, and granted withholding of removal.  *Id.* ¶ 15; *see* Dkt. 1, Ex. 3 at 16-19.  Petitioner appealed the immigration judge's order on November 17, 2025, to the Board of Immigration Appeals ("BIA"), and his appeal remains pending.  Blanco Rodriguez Decl., ¶ 16; Ingram Decl., ¶ 11.  As of the date of his petition, Petitioner has not requested a bond hearing before the immigration court.  Dkt. 1 at 6.

Petitioner has remained detained at the NWIPC since July 15, 2025.  Blanco Rodriguez Decl., ¶ 14.  He asserts he has no criminal history other than traffic violations and the pending criminal charge.  *Id.* ¶¶ 11-12.

On April 10, 2026, Petitioner filed the instant petition, seeking the following relief:

1.     Release from immigration custody, or alternatively, a custody hearing before an immigration judge within fourteen days, at which the Government must establish by clear and convincing evidence that he presents a flight risk or danger to the community and that no alternative to detention can mitigate those risks;

2.     An order prohibiting Respondents from transferring him outside the District without forty-eight hours' advance notice to his attorney and the Court;

3.     An order prohibiting Respondents from re-detaining him, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration

---

[4] Neither the Notice of Custody Determination, nor the Warrant for Arrest of Alien, are in the record.

ORDER DENYING WRIT OF HABEAS CORPUS -
4

judge;

4.      A declaration that his prolonged detention without a hearing violates the Due Process Clause of the Fifth Amendment;

5.      An award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412, or any other basis justified under law; and

6.      Any other relief this Court deems just and proper.

Dkt. 1 at 19-20.

## III.    LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Petitioner claims that his prolonged immigration detention, which he alleges Respondents have failed to justify at a hearing conducted by a neutral decisionmaker, violates his due process rights under the Fifth Amendment. *See* Dkt. 1 at 2. He seeks a bond hearing or, alternatively,

ORDER DENYING WRIT OF HABEAS CORPUS - 5

release from immigration custody.  *Id.*  Respondents argue in response that Petitioner is not entitled to a bond hearing because his temporary humanitarian parole terminated, thus requiring his detention under 8 U.S.C. § 1225(b).  *See* Dkt. 5 at 4.  Petitioner does not challenge the circumstances under which he was re-detained or the Government's statutory classification of his current detention.  *See generally* Dkt. 1; *see id.* ¶ 53.

To advance their respective positions, the parties apply tests articulated in *Banda*[5] and *Mathews*,[6] which courts in this District frequently apply in immigration habeas proceedings.  *See* Dkts. 1, ¶¶ 51-55, 5 at 4-6.  For the following reasons, the Court finds *Mathews* inapplicable to Petitioner's claim and the current record insufficiently developed to apply *Banda*.

**A.  *Mathews* does not apply to Petitioner's claim.**

While cited and applied by both parties, *Mathews* does not provide the test most applicable for Petitioner's circumstances here.  The *Mathews* test resolves the question of whether the administrative procedures provided by the Government are constitutionally sufficient.  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  In resolving that question, courts consider (1) the private interest affected, (2) the Government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court.  *Id.*  It balances the benefits or burdens of "additional or substitute procedural safeguards."  *Id.* at 335.  It does not, however, resolve the issue of whether *any particular procedure*, such as a bond hearing, must be provided in a given case.  *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019).  Courts in this District most commonly apply the *Mathews* test in cases challenging a noncitizen's arrest and re-detention, particularly involving noncitizens who claim to have been

---

[5] *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019).

[6] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

ORDER DENYING WRIT OF HABEAS CORPUS -
6

unlawfully re-detained after having been conditionally released. *See e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025); *Reyes v. Hermosillo*, 2026 WL 507678 (W.D. Wash. Feb. 24, 2026).

Here, Petitioner does not challenge the circumstances of his arrest or re-detention, but rather asserts that due process entitles him to a bond hearing because his detention has become prolonged. *See* Dkt. 1, ¶¶ 22-27. Thus, the relevant question is whether Petitioner is entitled to that bond hearing (*i.e.*, *any* procedure) and not, by contrast, whether the administrative procedures provided to Petitioner thus far have been constitutionally sufficient. *Banda*, 385 F. Supp. 3d at 1106; *see also Amatbek Uulu v. Scott*, 2026 WL 865813, at *5 (W.D. Wash. Mar. 30, 2026). Accordingly, the Court declines to assess Petitioner's claim of prolonged detention under *Mathews*.

### B. The record is insufficient to determine Petitioner's detention authority.

As acknowledged above, courts in this District apply the multi-factor test articulated in *Banda* in assessing the constitutionality of alleged prolonged detentions under 8 U.S.C. § 1225(b). The current record, however, does not adequately establish the applicable statutory authority governing Petitioner's current detention. Resolving this threshold question is important because the answer affects what procedures the Government must follow.[7] *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1196 (W.D. Wash. 2025). "Where [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). More importantly,

---

[7] For example, noncitizens detained under 8 U.S.C. § 1226(a) are entitled to a bond hearing at the outset of detention. *Jennings*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Noncitizens detained under § 1225(b)(2), by contrast, are subject to mandatory detention without eligibility for bond. *Banda*, 385 F. Supp. 3d at 1112.

ORDER DENYING WRIT OF HABEAS CORPUS -
7

*Banda* would only apply if Petitioner's detention is mandatory, rather than discretionary. *Banda*, 385 F. Supp. 3d at 1113 ("This case raises the question of whether and if so, when, due process required a bond hearing for noncitizens subject to mandatory detention under § 1225(b)(1).").

The petition does not meaningfully discuss the relevant statutory detention schemes, apply them to Petitioner's detention, or challenge Respondents' classification of his detention. Rather, Petitioner asserts (correctly) that "Respondents almost certainly believe that Petitioner is detained under 8 U.S.C. § 1225(b)(2)."[8] Dkt. 1, ¶ 53. Respondents' return in response does argue that Petitioner is detained pursuant to § 1225(b), but the limited evidentiary record does not definitively support that position.

Respondents advance two arguments, but the first is undermined by the record and the second is rejected by courts in this District. Respondents first argue that Petitioner's humanitarian parole, which they contend was the "sole means of release" for noncitizens subject to § 1225(b), had expired or was terminated. Dkt. 5 at 3 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018)). Respondents then argue that, because parole ended, he should have been returned to custody and "treated as any other applicant for admission." *Id.* at 4 (first citing *Jennings*, 583 U.S. at 287, then citing 8 U.S.C. § 1182(d)(5)).

The Court begins by observing that the record contains little evidence of Petitioner's parole, including the conditions and under what authority it was granted. As previously noted, Respondents provide one document from Petitioner's immigration file that contains a stamp with a handwritten reference to INA § 212(d)(5). Steveson Decl., ¶ 2, Ex. B at 2. The document itself is not intuitive, and Respondents do not explain its relevance or provide contextual

---

[8] The Court does not interpret this acknowledgement to be a legal challenge to the lawfulness of Petitioner's detention under § 1225(b).

ORDER DENYING WRIT OF HABEAS CORPUS - 8

information to support their position.  *See* Dkt. 5 at 2.  Ingram simply asserts that Petitioner was granted humanitarian parole, but he does not assert having personal knowledge of Petitioner's parole, who granted it, or any of its terms beyond its expiration date.  *See* Ingram Decl., ¶ 4. Respondents provide no other parole-related documents.  While Petitioner acknowledges being paroled generally, *see* Dkt. 1 at 5; Blanco Rodriguez Decl., ¶ 5, he does not discuss the authority governing his parole, provide any related documents, or respond to the Government's characterization of his parole in reply.  With such limited information, the Court is not convinced the entirety of Petitioner's near three-year release was governed under what Respondents themselves characterize as "temporary" humanitarian parole (*see* Dkt. 5 at 5), particularly considering the conflicting information surrounding its expiration, as discussed below.

As for its expiration, Respondents first argue that Petitioner's parole automatically expired on November 16, 2022 (*see* Dkt. 5 at 2), but it is undisputed that Petitioner remained released well beyond that purported expiration date because ICE required him to enroll in, and comply with, an ATD program within 60 days of his arrival in Seattle.  *See* Ingram Decl., ¶ 5; Blanco Rodriguez Decl., ¶ 5.  Respondents do not explain why ICE did not seek Petitioner's return to custody or why they required ATD enrollment if expiration of parole required his return to detention.  Requiring Petitioner to enroll in, and comply with, the ATD program after his parole expired suggests ICE contemplated and accepted that Petitioner would be conditionally released, *as an alternative to detention*, even after his parole's expiration date.  It is also possible that Respondents had extended Petitioner's parole and the ATD enrollment was an additional condition imposed.  But, again, the bare record unaddressed by the parties does not provide clarity.  *Compare* Ingram Decl., ¶ 4 (asserting Petitioner's parole expired on November 16,

ORDER DENYING WRIT OF HABEAS CORPUS - 9

2022) with *id.* ¶¶ 5, 7 (asserting Petitioner enrolled in ATD "[a]s a condition of [his] release on parole" and documenting Petitioner's participation as late as July 2025).

Alternatively, Respondents argue Petitioner's parole terminated when he was issued a charging document in August 2025. Dkt. 5 at 4 (citing 8 C.F.R. § 212.5(e)(2)(i)).[9] However, the record reflects that Petitioner had already been issued a charging document two and a half years earlier. *See* Steveson Decl., ¶ 2, Ex. C at 3 ("On February 4, 2023, [Petitioner] appeared at the Seattle Field Office as instructed and was issued a Notice to Appear.").[10] Respondents do not explain why that 2023 charging document did not operate to terminate his conditional parole, as they assert the August 2025 NTA did here, or why they did not seek Petitioner's return to custody at that time. Rather, the record reflects that Petitioner remained released, subject to ATD requirements until his current re-detention in July 2025. *See* Steveson Decl., ¶ 2, Ex. C at 3.

Prior to revoking parole, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States," and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A). Respondents have offered no evidence that the purpose for which Petitioner's parole was authorized has been accomplished or that a DHS official with the requisite authority has decided that neither humanitarian reasons nor public benefit warrants Petitioner's continued presence in the United States. To the extent this information is contained

---

[9] Title 8 C.F.R. § 212.5(e)(2)(i) states in relevant part, "When a charging document is served on the [noncitizen], the charging document will constitute written notice of termination of parole, unless otherwise specified."

[10] The NTA is not in the record.

ORDER DENYING WRIT OF HABEAS CORPUS - 10

in the Notice of Custody Determination purportedly issued to Petitioner on the date of his arrest (*see* Ingram Decl., ¶ 7), that document is missing from the record.

Turning to Respondents' second argument, Courts in this District reject the argument that noncitizens detained under similar circumstances are "seeking admission" and thus, subject to § 1225(b). *See Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. 2025) (collecting cases). In *Rodriguez Vazquez*, the court held that noncitizens who lived in the United States for years and are arrested during routine compliance activities are not engaged in "seeking admission." *Id*. at 1329; *see also Jennings*, 583 U.S. at 288 (describing § 1226 as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry"). Here, Petitioner had been living in the United States for nearly three years before he was arrested during a scheduled ATD appointment, which suggests he was not "seeking admission" as contemplated by § 1225(b).

Finally, the Court independently observes that the timing of Petitioner's detention calls into question Respondents' argument that § 1225(b)(2) mandates his detention. In *Jennings*, the Supreme Court acknowledged that § 1225(b)(2) requires detention until removal proceedings have concluded. 583 U.S. at 299. Here, Petitioner was not charged with removability until August 8, 2025, several weeks after he was arrested and re-detained. Ingram Decl., ¶¶ 7-8. Prior to the August 8, 2025, NTA being filed with the immigration court, ICE had never initiated removal proceedings against Petitioner.[11] *See* Blanco Rodriguez Decl., ¶ 7; *see also* Dkt. 5 at 6. Removal proceedings are now ongoing, but to the extent Respondents argue § 1225(b)(2) has

---

[11] There is no evidence the February 4, 2023, NTA referenced above was filed with the immigration court. Respondents do not suggest otherwise.

ORDER DENYING WRIT OF HABEAS CORPUS - 11

authorized the entirety of Petitioner's detention, the fact that ICE had not initiated removal proceedings until after his arrest and re-detention undermines that theory.

In sum, there are a number of factual questions that remain unanswered and the Court is unwilling to find, on this record, that Petitioner's detention is governed by § 1225(b) and, consequently, to decide whether due process affords him a bond hearing.[12]  If Petitioner was released pursuant to humanitarian parole, the law recognizes it is possible for noncitizens to remain, as a matter of statute, an "arriving [noncitizen]" and subject to § 1225(b) custody, notwithstanding literal presence in the United States.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *see also Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025).  However, "[p]articularly relevant in each case is the government's treatment of the petitioner seeking habeas relief: where a petitioner has been treated by Respondents as subject to discretionary detention under [§ 1226], rather than mandatory detention under [§ 1225], the former is more likely to apply." *Del Valle Castillo*, 2025 WL 3524932, at *5 (internal quotations and citations omitted).  That Petitioner remained released for a significant amount of time, notwithstanding his parole purportedly ending, suggests that the Government may have initially viewed his detention as mandatory under § 1225(b), but later viewed it as discretionary under § 1226(a).  *See Singh v. Bondi*, 2026 WL

---

[12] While it is Petitioner's burden to prove he is in custody in violation of the law, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c), a number of relevant documents are missing from Petitioner's U.S. Citizenship and Immigration Services ("USCIS") file provided by Respondents.  Documents related to Petitioner's release on humanitarian parole (and its subsequent expiration or termination) (*see* Ingram Decl., ¶ 4), Petitioner's enrollment in ATD (*see id.* ¶ 5), the February 4, 2023, NTA (*see* Steveson Decl., ¶ 2, Ex. C at 3), the July 17, 2025, Notice of Custody Determination (*see* Ingram Decl., ¶ 7), and the July 15, 2025, Warrant for Arrest of Alien (*see id.*) are potentially relevant and probative to the parties' respective positions regarding Petitioner's detention.  Respondents provide no explanation for their omission from the record.

ORDER DENYING WRIT OF HABEAS CORPUS -
12

799706, at *3 (W.D. Wash. Mar. 23, 2026) (acknowledging the Attorney General may release noncitizens on bond or conditional parole under 8 U.S.C. § 1226(a)).

If Petitioner is detained under § 1226(a), he is statutorily entitled to a bond hearing, *see Prieto-Romero*, 534 F.3d at 1058 (citing 8 C.F.R. § 236.1), and *Banda* would be inapplicable.  If he is detained under § 1225(b), in contrast, *Banda* would be the appropriate test to determine whether his detention has become so prolonged such that due process entitles him to a bond hearing.  Adequately establishing which law governs Petitioner's detention is a necessary prerequisite before the Court can decide whether the law provides relief.[13]  Petitioner has not demonstrated by a preponderance of the evidence that he is in custody in violation of the Constitution or laws of the United States.  Petitioner's request for a bond hearing is therefore denied without prejudice.

## C.  Remaining Requested Relief

Petitioner also seeks injunctive relief related to his (1) potential transfer from the District and (2) possible future re-detention.  Dkt. 1 at 19.  A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).  A party must also show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the

---

[13] This is not to say a Petitioner must be the sole source of evidence to establish detention authority.  Petitioner here, however, has effectively taken no position. *See generally* Dkt. 1.  The Court also observes that Petitioner, while alleging he has not received a bond hearing, has not affirmatively sought one during his detention because he claims it would be futile. *See id.* at 6.  Petitioner does not assert he has been *unable* to request one.

ORDER DENYING WRIT OF HABEAS CORPUS -
13

case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Petitioner does not engage with the *eBay* factors or provide sufficient factual development to show a real and imminent risk of irreparable injury absent a court order. In addition, Petitioner does not challenge the lawfulness of his arrest or re-detention here, so he has not demonstrated a cognizable danger of irreparable injury in the future. Accordingly, Petitioner's request for permanent injunctive relief is denied.

### V.    CONCLUSION

Based on the foregoing, the Court DENIES the habeas petition (Dkt. 1) without prejudice.

Dated this 20th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER DENYING WRIT OF HABEAS CORPUS -
14